**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
JANE DOE,                      :    Civil Action No. 06-3529(NLH)
          Plaintiff,           :
                               :
     v.                        :    OPINION
                               :
JOHN T. SCHWERZLER,            :
GLOUCESTER COUNTY INSTITUTE    :
OF TECHNOLOGY,                 :
ROBERT TAFFET, M.D.,           :
TRISH GREEN, DANIEL GREEN,     :
and GEORGE BREEN,              :
                               :
          Defendants.          :
```

**APPEARANCES:**

Clifford L. Van Syoc, Esquire
Sebastian B. Ionno, Esquire
Van Syoc Law Offices Chartered
Cherry Tree Corporate Center
535 Route 38 East - Suite 501
Route 38 & Cuthbert Boulevard
Cherry Hill, NJ 08002

    *Attorneys for Plaintiff*

John C. Eastlack, Jr., Esquire
Holston, Macdonald, Uzdavinis & Ziegler, PC
66 Euclid Street
Po Box 358
Woodbury, NJ 08096

    *Attorney for John T. Schwerzler*

William M. Tambussi, Esquire
Christine P. O'Hearn, Esquire
Brown & Connery, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108

    *Attorneys for Gloucester County Institute of Technology*

Allan E. Richardson, Esquire

1

915 Haddon Ave.
Collingswood, NJ 08108

     *Attorney for Robert Taffet*

Michael Paul Madden, Esquire
Madden & Madden
108 Kings Highway East, Suite 200
P.O. Box 210
Haddonfield, NJ 08033-0389

     *Attorney for Trish Green*

Richard L. Goldstein, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin, PA
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002

     *Attorney for Daniel Green*

Lisa S. Grosskreutz, Esquire
Parker, McCay
Route 73 & Greentree Road
Suite 401
Marlton, NJ 08053

     *Attorney for George Breen*

**HILLMAN**, District Judge

     This matter has come before the Court on defendant Gloucester County Institute of Technology's ("GCIT") motion to dismiss all of the claims in plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as defendant Robert Taffet's Rule 12(b)(6) motion and defendant Trish Green's Rule 12(c) motion. GCIT's motion is joined by defendants John Schwerzler, Daniel Green and George Breen. For the reasons

2

expressed below, GCIT's motion will be denied, and Taffet and Trish Green's motions will be granted.

## BACKGROUND

Plaintiff, proceeding as Jane Doe, filed a complaint against the defendants for claims arising out of a sexual relationship plaintiff had with her swim coach, defendant John Schwerzler. According to plaintiff's complaint, Schwerzler initiated a sexual relationship with plaintiff in 1998, when she was thirteen years old, and it lasted until 2004, when she was nineteen. Plaintiff claims that defendants violated the New Jersey Law Against Discrimination, N.J. Stat. Ann. 10:5-1 et seq., ("NJLAD") because of their various roles in the inappropriate sexual relationship.

In October 2006, defendants moved to dismiss the case for lack of subject matter jurisdiction. Defendants argued that plaintiff, who grew up in New Jersey and went to college in Kentucky, was still a citizen of New Jersey at the time that she filed the complaint. On June 28, 2007, this Court denied defendants' motion without prejudice and allowed plaintiff another opportunity to submit proofs evidencing that she was a citizen of Kentucky. On April 17, 2008, this Court held that plaintiff's proofs were sufficient to demonstrate that she was a citizen of Kentucky and that diversity of citizenship, therefore, existed between the two parties.

GCIT has now moved to dismiss plaintiff's NJLAD claim against it.  GCIT's motion is joined by John Schwerzler, Daniel Green and George Breen.  Defendants Robert Taffet and Trish Green have also filed motions to dismiss plaintiff's NJLAD claims against them.  Plaintiff has opposed all motions.

### DISCUSSION

### I.   Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

### II.  Analysis

### A.   Standard for Motion to Dismiss[1]

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the

---

[1] Defendant Trish Green has moved to dismiss plaintiff's complaint pursuant to 12(c).  The other defendants have moved to dismiss pursuant to 12(b)(6).  The standards used in a 12(c) motion and a 12(b)(6) motion are exactly the same.  Turbe v. Government of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

4

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation

that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).   The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).   If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

**B. GCIT's Motion to Dismiss**

GCIT's basis for why plaintiff's complaint should be

6

dismissed is separated into two arguments.[2]  GCIT argues that
plaintiff's NJLAD[3] claim as it relates to conduct prior to 2001
should be dismissed because plaintiff was not a student at GCIT
or GCIT employee during this time.  Once plaintiff achieved the
age of consent in 2001--i.e., was over the age of sixteen--and
became employed by GCIT as a lifeguard, GCIT argues that
plaintiff's NJLAD claim should be dismissed because the
relationship between plaintiff and her swim coach was consensual,
and an employer cannot be held liable for a hostile environment
when a consensual sexual relationship exists between employees.
GCIT's arguments are unpersuasive and fail at this motion to

_____

[2]In her opposition brief, plaintiff states that GCIT did not
move to dismiss her claims for common law sexual abuse and
intentional infliction of emotional distress.  Plaintiff,
however, does not assert these claims in her complaint.  Because
plaintiff has not made these claims, they are not part of her
lawsuit against GCIT.  The only claim plaintiff asserts against
GCIT, or any of the defendants, is for a violation of the NJLAD.

[3]The NJLAD provides,

    All persons shall have the opportunity to obtain
    employment, and to obtain all the accommodations,
    advantages, facilities, and privileges of any place of
    public accommodation, publicly assisted housing
    accommodation, and other real property without
    discrimination because of race, creed, color, national
    origin, ancestry, age, marital status, affectional or
    sexual orientation, familial status, disability,
    nationality, sex, gender identity or expression or
    source of lawful income used for rental or mortgage
    payments, subject only to conditions and limitations
    applicable alike to all persons. This opportunity is
    recognized as and declared to be a civil right.

N.J. Stat. Ann. 10:5-4.

dismiss stage.

As a primary matter, GCIT's division of the six year sexual relationship between plaintiff and Schwerzler based on plaintiff attaining the "age of consent" distorts plaintiff's claims and imposes an artificial timeline by which to analyze her claims. GCIT interprets plaintiff's claims to tell the story of a consensual sexual relationship because plaintiff "does not allege she was raped, assaulted, coerced or otherwise forced to participate in sexual relations with defendant Schwerzler against her will." (GCIT Br. at 13-14.) Because plaintiff has alleged a consensual sexual relationship, and, as of 2001, was of the age of consent, GCIT argues that she has no claim. This interpretation of plaintiff's claims is not only inconsistent with plaintiff's complaint, it ignores the fact that the sexual relationship occurred for years prior to plaintiff turning sixteen.

Throughout her complaint, plaintiff has described her entire relationship with Schwerzler as "unlawful," "improper," and "inappropriate." (Compl. ¶¶ 3, 10, 11, 13, 14, 15, 16.) She has also described Schwerzler as a "sexual predator." (Compl. ¶ 8.) Indeed, the entire basis for plaintiff's NJLAD claim is that her right to be free from inappropriate sexual conduct was violated. Simply because plaintiff does not claim to have been "raped, assaulted, coerced or forced" does that mean that plaintiff's

relationship was proper and did not violate her NJLAD rights.

Moreover, GCIT's position that Schwerzler's sexual relationship with plaintiff became consensual as of her sixteenth birthday simply because she reached the statutory age of consent implicitly recognizes that Schwerzler's sexual relationship with plaintiff from age thirteen until she turned sixteen was a violation of New Jersey law, and therefore statutorily non-consensual.  An improper sexual relationship occurring prior to the age of consent is not automatically transformed into a consensual one on the day of the victim's sixteenth birthday. Despite GCIT's urging otherwise, the "age of consent" is not a synonym for consensual.[4]

Thus, any argument to dismiss plaintiff's claims based on her age must fail.  Similarly, any argument to dismiss plaintiff's claims based on plaintiff "consenting" to the sexual relationship with Schwerzler must fail as well.  The only line of demarcation that the Court will address is when plaintiff became

---

[4]Under New Jersey law, a person is guilty of sexual assault if he commits an act of sexual penetration with another person when, *inter alia*, the victim is less than 13 years old, or the victim is at least 13 but less than 16 years old.  N.J.S.A. 2C:14-2; see also J.M.L. ex rel. T.G. v. A.M.P., 877 A.2d 291, 295 (N.J. Super. Ct. App. Div. 2005) (stating that a minor may not consent to conduct prohibited by the NJLAD because the legislature has decreed that, as a matter of public policy, a person under 16 "is not mature enough to consent to or to welcome the sexual advances of an older man").

an employee of GCIT in 2001.[5]

Based on the foregoing, the only valid basis advanced by GCIT to challenge the viability of plaintiff's NJLAD claim is her status with GCIT.  With regard to 2001-2004, plaintiff was an employee of GCIT.  An employee may maintain a claim under the NJLAD for two types of sexual discrimination--*quid pro quo* harassment and hostile work environment.  Lehmann v. Toys R Us, Inc., 626 A.2d 445, 452 (N.J. 1993).  *Quid pro quo* sexual harassment occurs when an employer attempts to make an employee's submission to sexual demands a condition of his or her employment.  Id.  In contrast, hostile work environment sexual harassment occurs when an employer or fellow employees harass an employee because of his or her sex to the point at which the working environment becomes hostile.  Id.  In this case, plaintiff has not alleged any *quid pro quo* claim, and instead contends that she was subject to a hostile environment because of the improper sexual relationship with Schwerzler.  Specifically with regard to her claims against GCIT, plaintiff claims that as the employer of Schwerzler, it is liable for fostering such a hostile environment.

_____

[5]GCIT's motion to dismiss plaintiff's claims arising out of the years 2001-2004 is based on plaintiff being seventeen years old and an employee of GCIT.  Plaintiff was not an employee of GCIT when she was sixteen years old, and of the "age of consent." This demonstrates another flaw with GCIT's division of plaintiff's claims with regard to her age.

In order to prove a claim for hostile environment under the NJLAD, a plaintiff must show "the complained-of conduct (1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." Id. at 603-04. As discussed above, GCIT's only basis for challenging the sufficiency of plaintiff's complaint with regard to these elements is that plaintiff had a consensual relationship with Schwerzler, and an employer cannot be held liable for a hostile environment claim when it is based on a consensual relationship between coworkers. Even though courts have held that a consensual relationship between coworkers cannot usually serve as a basis for a hostile environment claim," Erickson v. Marsh & McLennan Co., Inc., 569 A.2d 793, 802 (N.J. 1990) ("[W]e find no reason to extend the protection of LAD to sex-discrimination claims based on voluntary personal relations in the work place."), because plaintiff has pleaded that the relationship was "improper" and "unlawful," at this stage, plaintiff's complaint cannot be dismissed on the premise that the relationship was consensual. Accordingly, because GCIT has not challenged plaintiff's pleadings with regard to the other elements of a hostile environment claim, plaintiff's NJLAD claim against GCIT may stand with regard to the years 2001-2004.

With regard to the period of 1998-2001, GCIT argues that because plaintiff was not a student or employee of GCIT, she has no cause of action under the NJLAD.  Plaintiff does not dispute that she was not an employee of GCIT during that time period. She argues, however, that because a claim under the NJLAD for hostile environment has been found to be viable in the school setting, plaintiff's claim should be permitted to proceed because GCIT is a school.

Although hostile environment claims under the NJLAD have been traditionally brought in the employment context, the NJLAD has been extended into other contexts, such as a school setting. See L.W. v. Toms River Regional Schools Bd. of Education, 915 A.2d 535, 550 (N.J. 2007) (holding that a school district may be found liable under the NJLAD for student-on-student sexual orientation harassment that creates a hostile educational environment when the school district should have known of the harassment, but failed to take action reasonably calculated to end the harassment).  GCIT argues L.W.'s holding is narrow and only applies to student-on-student harassment, which is not at issue here.  Additionally, GCIT argues that even though it is a school, plaintiff was not a student at GCIT, and therefore, the fact that GCIT is a school and plaintiff was a student is immaterial.

Plaintiff counters that even though she was not a student at

12

GCIT, the principles of L.W. can be applied here because she was a student, albeit of another school, who came to GCIT to swim on its school-sponsored swim team.  Additionally, plaintiff contends that the NJLAD is applicable to GCIT because it is a place of public accommodation, and as such, she should be able to avail herself of that public accommodation without harassment based on her sex.  In response, GCIT argues that plaintiff was not denied a place of public accommodation because she was not denied a public education since GCIT was not her school.

Even though no court has addressed whether a student who participates in another public school's school-sponsored swim team can maintain a claim for hostile environment under the NJLAD based on the sexual harassment of the school's employee, the NJLAD's broad remedial goal to prevent sexual harassment in places of public accommodation appears to encompass such a claim.

The NJLAD was enacted on "bedrock principle" that "[f]reedom from discrimination is one of the fundamental principles of our society."  L.W., 915 A.2d at 546 (citations omitted).  "[T]he overarching goal of the [LAD] is nothing less than the eradication of the cancer of discrimination."  Id. (citation and quotation omitted).  "In short, the LAD is the Legislature's attempt to protect society from the vestiges of discrimination."  Id.  (citation and quotation omitted).

In order to achieve such a goal, the NJLAD is to be

13

liberally construed, and broadly applied.  Id. (citing N.J.S.A.
10:5-3 ("[T]his act shall be liberally construed in combination
with other protections available under the laws of this State.")
and Ptaszynski v. Uwaneme, 853 A.2d 288 (N.J. Super. Ct. App.
Div. 2004), cert. denied, 862 A.2d 56 (N.J. 2004) ("[T]he more
broadly [the LAD] is applied the greater its antidiscriminatory
impact.")).

These principles inform the Court's holding here.  The NJLAD
provides that "[a]ll persons shall have the opportunity to obtain
. . . all the accommodations, advantages, facilities, and
privileges of any place of public accommodation . . . without
discrimination because of . . . sex . . . ."  In the simplest
terms, and regardless of whether plaintiff is a student or
employee, plaintiff (a "person") should have the opportunity to
participate in the GCIT ("place of public accommodation"[6]) swim
team in GCIT's pool ("accommodations, advantages, facilities, and
privileges") without being sexually harassed ("discrimination
because of sex") by a GCIT's employee.[7]  Plaintiff's right to be

---

[6]GCIT does not appear to dispute it is a place of public
accommodation.  See N.J.S.A. 10:5-5(l) (listing places of public
accommodation, including swimming pools and "any kindergarten,
primary and secondary school, trade or business school, high
school, academy, college and university, or any educational
institution under the supervision of the State Board of
Education, or the Commissioner of Education of the State of New
Jersey").

[7]Under traditional workplace harassment jurisprudence,
employers are held vicariously liable for supervisor-on-employee
harassment under agency principles.  Lehmann v. Toys R Us, Inc.,

free from sexual harassment when she participates in an activity
sponsored by and held at a place of public accommodation is just
as compelling as an employee's right to be free from harassment
in the work place, and a student's right to be free from
harassment in school.[8]

Consequently, because the Court finds that the NJLAD
encompasses plaintiff's claim, GCIT's motion to dismiss
plaintiff's claims for the years 1998-2001 must be denied as
well.  Additionally, because defendants John Schwerzler, Daniel
Green, and George Breen have joined in on GCIT's unsuccessful
motion to dismiss, plaintiff's claims against them also stand.

**C.  Individual defendant Trish Green's motion to dismiss**

Defendant Trish Green, GCIT's athletic director, argues that
plaintiff's complaint should be dismissed for the same reasons as
advanced by GCIT.  Because GCIT's arguments are unavailing,
Green's motion based on the same arguments fails.  Green also
argues, however, that plaintiff has not pleaded any facts to
allow for her individual liability under the NJLAD.  Plaintiff
has opposed Green's motion.

An individual may only be held liable under the NJLAD if he

---

626 A.2d 445, 462 (N.J. 1993).

[8]"The right of a student to achieve an education free from
sexual harassment is certainly as important as the rights of an
employee in a work setting." L.W., 915 A.2d at 547 (citation
omitted).

15

is an "aider or abettor."  Tarr v. Ciasulli, 853 A.2d 921, 928

(N.J. 2004).  In Tarr, the New Jersey Supreme Court held:

> [I]n order to hold an employee liable as an aider or
> abettor, a plaintiff must show that "'(1) the party whom the
> defendant aids must perform a wrongful act that causes an
> injury; (2) the defendant must be generally aware of his
> role as part of an overall illegal or tortious activity at
> the time that he provides the assistance; [and] (3) the
> defendant must knowingly and substantially assist the
> principal violation.'"

Id. (quoting Hurley v. Atlantic City Police Dep't, 174 F.3d 95,

127 (3d Cir. 1999) (other citations omitted)).  In order to

determine whether a defendant provided "substantial assistance,"

the Tarr court set forth the following factors:

> (1) the nature of the act encouraged, (2) the amount of
> assistance given by the [defendant], (3) whether the
> [defendant] was present at the time of the asserted
> harassment, (4) the [defendant's] relations to the others,
> and (5) the state of mind of the [defendant].

Id. 928.

Specifically with regard to supervisor liability, a

supervisor has a duty to act against unlawful gender-based

harassment.  Hurley, 174 F.3d at 126.  Therefore, a supervisor

can be individually liable when he breaches this duty through

deliberate indifference to the harassing conduct.  Id.

Individual liability, however, even in the context of failure to

act, "require[s] active and purposeful conduct."  Tarr, 853 A.2d

at 929; Cicchetti v. Morris County Sheriff's Office, 947 A.2d

626, 646 (N.J. 2008).

16

Here, plaintiff's complaint fails to state a claim against
Green for aiding and abetting Schwerzler in the violation of
plaintiff's NJLAD rights.  In her complaint, plaintiff alleges
that in early August 2004, Green approached plaintiff with
another GCIT employee, and "told plaintiff that she would not be
allowed to leave the premises until she had confirmed rumors that
they had learned of pertaining to an inappropriate sexual
relationship with Schwerzler."  (Compl. ¶ 11.)  Plaintiff also
alleges that Green and the other employee told plaintiff that she
could not leave the premises until she signed a written
statement.  (Id.)  Plaintiff claims that she signed the
statement, but that Green and the other employee would not her
leave until she called her parents and disclosed to them the
existence of the relationship.  (Id.)  Plaintiff further alleges
that Green promised plaintiff and her parents confidentiality,
but Green "did absolutely nothing to comply with that
representation."  (Id.)

These allegations are insufficient because they do not
claim that Green knew of the ongoing relationship between
plaintiff and Schwerzler prior to August 2004, or that she either
substantially assisted Schwerzler's conduct or purposefully
ignored Schwerzler's conduct.  To the contrary, plaintiff's
allegations actually demonstrate that when Green found out about
the relationship, she confronted plaintiff about it and even

17

directed that plaintiff inform her parents.  A supervisor taking action to expose an allegedly improper sexual relationship between employees is not a violation of the NJLAD.  Additionally, a supervisor's alleged failure to keep a promise regarding the confidentiality of an improper relationship is also not a violation of the NJLAD.  Consequently, even accepting as true plaintiff's allegations against Green, because these allegations do not state a cause of action for aider and abettor liability under the NJLAD, Green's motion to dismiss plaintiff's claims against her must be granted.

**D. Individual defendant Robert Taffet's motion to dismiss**

Like Trish Green, defendant Robert Taffet argues that plaintiff's NJLAD claim against him should be dismissed because plaintiff has failed to allege facts sufficient for his individual liability.  In her complaint, plaintiff claims the following:

> [D]efendant Dr. Robert Taffet, M.D., was an orthopedic surgeon and a parent on the swim team who combined with the defendant Schwerzler to attempt to cover up Schwerzler's misconduct, defendant Taffet having retained an attorney for the plaintiff with the intent and purpose that plaintiff would be induced, as a result of counsel with that attorney, to advise law enforcement that plaintiff did not want to be bothered with the criminal case and did not want to be involved; as a result of the defendant Taffet's conspiracy with defendant Schwerzler, Taffet is jointly responsible for the misconduct of the defendant Schwerzler.
>
> The defendant Schwerzler admitted to plaintiff in or about the month of December, 2004 that he was the one who had actually provided the funds to pay for the

18

> attorney selected for plaintiff by the defendant
> Taffet.
>
>        In or about the year 2005, plaintiff received a
> phone call from the defendant Taffet advising plaintiff
> that "it would be best" if plaintiff did not go to her
> parents' home from college in Kentucky for a while, and
> when plaintiff inquired as to the reason for this
> statement, defendant Taffet advised plaintiff that the
> defendant Schwerzler was going to "dig up" things from
> plaintiff's past that would make plaintiff "look
> horrible" during the criminal trial, despite the fact
> that there was no factual basis for such a claim, an
> act in furtherance of the conspiracy.

(Compl. ¶¶ 5, 6, 18.)

As a primary matter, even though he was never an employee of

GCIT, Taffet could be held individually liable under the NJLAD.

The NJLAD makes it unlawful for "any person, whether an employer

or an employee or not, to aid, abet, incite, compel or coerce the

doing of any of the acts forbidden [under the LAD.]"  N.J.S.A.

10:5-12e (emphasis added).  Thus, the <u>Tarr</u> standard discussed

above applies to whether plaintiff has stated a claim against

Taffet for aiding and abetting liability.

Based on the standard in <u>Tarr</u>, Plaintiff's complaint fails

to state a claim against Taffet.  Plaintiff's NJLAD claim against

Schwerzler is that their improper sexual relationship created an

impermissible hostile environment.  In order for Taffet to be

liable for aiding and abetting Schwerzler in the perpetuation of

that harassment, Taffet must have assisted Schwerzler in

facilitating his encounters with plaintiff.  Plaintiff, however,

does not make any such allegations.  Instead, plaintiff's allegations against Taffet, taken as true, demonstrate Taffet's desire to shield both Schwerzler and plaintiff from exposure. Although it is questionable why Taffet, a parent of a swim team member, became involved in the situation, and it is unclear what Taffet's conflicting motivations were in first hiring an attorney to persuade plaintiff not to take part in any criminal investigation against Schwerzler, and then later warning plaintiff about Schwerzler's anticipated reputation-smearing of plaintiff, plaintiff has not alleged that Taffet took any part in assisting Schwerzler with his sexual relationship with plaintiff. Because plaintiff has not alleged how Taffet aided and abetted Schwerzler in the improper sexual relationship with plaintiff from 1998 through 2004, plaintiff's NJLAD claim against Taffet fails, and his motion to dismiss must be granted.[9]

## CONCLUSION

For the reasons expressed above, the motion of defendant

---

[9]The Court notes that in her complaint plaintiff uses the word "conspiracy" and the phrase "severe emotional distress," near the end of her complaint. (Compl. ¶¶ 18 & 19.)  It is equally true, however, that plaintiff's complaint consists of only one count against Taffet and indeed all defendants and that the count unambiguously asserts a violation of the NJLAD.  Even though Taffet's conduct, if true, is troubling and could possibly serve as a basis for other civil and criminal violations, such causes of action are not pled here.  It is not for the Court to construe random words in plaintiff's complaint as asserting separate causes of action that are not otherwise plainly and clearly pled within the meaning of the federal rules.

GCIT, joined by defendants Daniel Green, John Schwerzler, and George Breen, must be denied, and the motions of Trish Green and Robert Taffet to dismiss must be granted.  An appropriate Order will be entered.

Date: August 27, 2008                    s/ Noel L. Hillman

At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

21